This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38618**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JASON I. CORDOVA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason Lidyard, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** The opinion filed on August 11, 2022, is hereby withdrawn, and this opinion is substituted in its place. A jury convicted Defendant Jason Cordova of, among other charges, aggravated burglary, pursuant to NMSA 1978, Section 30-16-4(C) (1963); aggravated battery (great bodily harm), pursuant to NMSA 1978, Section 30-3-5(C) (1969); and tampering with evidence, pursuant to NMSA 1978, Section 30-22-5(A) (2003), based on Defendant entering Victim's home without her permission and sexually assaulting her. Defendant appeals his convictions for aggravated battery and tampering

with evidence, arguing his convictions for aggravated burglary and aggravated battery violate his right to be free from double jeopardy, and insufficient evidence supports his conviction for tampering with evidence. He also argues the district court improperly denied his motion for mistrial based on jury misconduct. We vacate Defendant's convictions for aggravated battery and tampering with evidence and otherwise affirm.

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of specific facts where necessary to our analysis.

## DISCUSSION

### I.      Double Jeopardy

**{3}** Defendant argues that his conviction for aggravated battery violates double jeopardy and must be vacated. We review Defendant's contention de novo. *See State v. Lopez*, 2008-NMCA-111, ¶ 8, 144 N.M. 705, 191 P.3d 563 ("We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation.").

**{4}** As relevant here, the double jeopardy clause protects defendants from receiving "multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). "Multiple punishment cases are of two types: those cases in which a defendant is charged with multiple violations of a single statute based on a single course of conduct ('unit of prosecution' cases) and those cases in which a defendant is charged with violating different statutes in a single course of conduct ('double-description' cases)." *State v. Sena*, 2020-NMSC-011, ¶ 44, 470 P.3d 227. Here, Defendant's double jeopardy claim is based on a double-description multiple punishment theory.

**{5}** We apply a two-part analysis to double-description cases, the first part which determines "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates [multiple] statutes." *State v. Swafford*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. If the conduct is unitary, we look to the statutes at issue "to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* Double jeopardy prohibits multiple punishments only when (1) the conduct is unitary, and (2) it is determined that the Legislature did not intend multiple punishments. *Id.* "Where we conclude that double jeopardy has been violated, we vacate the lesser offense and retain the conviction for the greater offense." *State v. Padilla*, 2006-NMCA-107, ¶ 36, 140 N.M. 333, 142 P.3d 921, *rev'd on other grounds*, 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299.

**{6}** The jury was instructed, in relevant part, that to convict Defendant of aggravated burglary, the State had to prove beyond a reasonable doubt that

        1.      [D]efendant entered a dwelling without authorization;

2.     [D]efendant entered the dwelling with the intent to commit criminal sexual penetration and/or aggravated battery once inside; [and]

3.     [D]efendant touched or applied force to [Victim] in a rude or angry manner while inside.

The jury was instructed, in relevant part, that in order to convict Defendant of aggravated battery, the State had to prove beyond a reasonable doubt that Defendant "touched or applied force to [Victim] by striking and/or punching and/or hitting her."

**{7}** Here, the two charges against Defendant that implicate double jeopardy both rely on facts demonstrating an element of force. As charged, the application of force within each act is indistinguishable. Victim testified that Defendant entered her home without permission, performed sexual acts on her, and once he was finished, stood up and punched her in the face. The State does not argue nor does the evidence suggest that separate conduct underpinned Defendant's aggravated burglary and aggravated battery convictions. We agree with Defendant, then, that the force elements for both aggravated burglary and aggravated battery were satisfied when Defendant punched Victim and that there was not an identifiable point that could distinguish between the completion of one crime and the start of another. *See State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616 (noting that "[c]onduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished"). We conclude that the conduct was unitary and proceed to analyze the second step of the double-description analysis, whether our Legislature intended to punish each conduct separately. *See State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747.

**{8}** "When . . . statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not," in order to ascertain if the Legislature intended to punish each crime separately. *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141; *see Swafford*, 1991-NMSC-043, ¶¶ 10, 30. "When dealing with statutes that are vague and unspecific or written with many alternatives, we apply a modified version of the *Blockburger* analysis." *State v. Gonzales*, 2019-NMCA-036, ¶ 22, 444 P.3d 1064 (internal quotation marks and citation omitted). "Under the modified *Blockburger* analysis, we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Id.* (internal quotation marks and citation omitted).

**{9}** With this framework in mind, we continue our analysis by looking to the elements of the two offenses to ascertain if the definition of one subsumes the definition of the other. *See Montoya*, 2013-NMSC-020, ¶ 32. It is apparent that the two statutes have distinct elements. Section 30-3-5(A) prohibits aggravated battery and reads, in pertinent part that "[a]ggravated battery consists of the unlawful touching or application of force to

the person of another with intent to injure that person." Meanwhile, the statute prohibiting aggravated burglary reads, in pertinent part that "[a]ggravated burglary consists of the unauthorized entry of any . . . dwelling or other structure, movable or immovable, with intent to commit any felony or theft therein and the person . . . commits a battery upon any person while in such place." Section 30-16-4(C). Thus, one of these offenses is not subsumed by the other based on these definitions alone.

**{10}** Because each statute requires proof of an element that the other does not, we can infer that the Legislature intended to authorize separate punishments under the aggravated battery and aggravated burglary statutes under the *Blockburger* test. *See Swafford*, 1991-NMSC-043, ¶ 12. However, this is merely an inference that allows us to presume the two statutes punish different offenses. *See id.* ¶ 31. We agree with Defendant that the presumption is not conclusive because the State charged him with aggravated burglary, which has three different alternative aggravating elements, making it a multipurpose statute. *See* § 30-16-4(A)-(C); *State v. Gutierrez*, 2012-NMCA-095, ¶ 14, 286 P.3d 608 (stating that we apply the modified *Blockburger* test when one of the statutes are written with various alternatives); *see also State v. Sena*, 2018-NMCA-037, ¶¶ 42-44, 419 P.3d 1240 (noting that aggravated burglary has numerous ways in which a conviction may occur so this Court must analyze it through the modified *Blockburger* test), *aff'd in part, rev'd in part, and remanded*, 2020-NMSC-011, ¶ 56. We now apply the modified *Blockburger* test which requires us to answer whether the legal theory advanced by the State at trial results in one offense subsuming the other. *See Gutierrez*, 2012-NMCA-095, ¶ 18; *Swick*, 2012-NMSC-018, ¶¶ 21, 24. More specifically, our analysis is guided by the State's theory of the specific conduct that violated the statutes at issue. *See Porter*, 2020-NMSC-020, ¶ 18.

**{11}** The charging document and jury instructions do not demonstrate which of Defendant's actions the State argued would satisfy the force element of each charge. *See State v. Serrato*, 2021-NMCA-027, ¶ 29, 493 P.3d 383 (noting that to determine the state's theory, we examine the charging documents, the state's closing argument, and the jury instructions). Despite this, the State was clear about its theory of the case when outlining the elements of both aggravated burglary and aggravated battery in its closing argument. *See id.* It specifically referenced the act of Defendant punching Victim in the face for both the "touched or applied force to [Victim] in a rude or angry manner" and "touched or applied force to [Victim] by striking or punching and or hitting her" elements of both crimes. *See Reed*, 2022-NMCA-025, ¶¶ 16-19 (determining that based on the modified *Blockburger* test and the jury being instructed it could rely on the same conduct to satisfy the force elements of two statutes, the defendant's conviction violated double jeopardy).

**{12}** Based on the State's argument to the jury that it could rely on Defendant's single act of force for both crimes, we conclude Defendant's convictions for aggravated burglary and aggravated battery violate double jeopardy and his conviction for aggravated battery must be vacated. *See State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[D]ouble jeopardy requires that the lesser offense merge

into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated.").

## II. The Evidence Is Insufficient to Sustain Defendant's Conviction for Tampering With Evidence

**{13}** Defendant argues the State presented insufficient evidence to support his conviction for tampering with evidence. At trial, the State presented evidence that a sheriff's deputy (the Deputy) picked up Defendant around 5:00 p.m. and gave him a courtesy ride to his parents' house on Espinoza Lane in Española, New Mexico because he was intoxicated. During the courtesy ride, Defendant was wearing a black and white shirt. Later that evening, a stranger wearing a black and white shirt entered Victim's home on Espinoza Lane without permission and punched and sexually assaulted Victim. The same Deputy was called to the scene where Victim described her perpetrator as wearing a shirt similar to that worn by Defendant during the courtesy ride. The Deputy remembered his earlier interaction with Defendant and twice went to Defendant's house that evening and asked Defendant to turn over the clothes he was wearing earlier. Defendant turned over jeans, boxer shorts, and shoes, but did not produce the shirt. Law enforcement never recovered the shirt.

**{14}** Defendant argues that he cannot be convicted of tampering simply because the black and white shirt worn during the commission of the crime could not be found. The State argues that the jury could reasonably infer Defendant lied about losing the shirt and thus Defendant's conviction for tampering with evidence was supported by substantial evidence

**{15}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by Montoya*, 2013-NMSC-020, ¶ 54. The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The question before us as a reviewing [c]ourt is not whether we would have had a reasonable doubt [about guilt] but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{16}** The jury, in this case, was instructed in relevant part, that to find Defendant guilty of tampering with evidence, it must find beyond a reasonable doubt that he (1) "destroyed and/or hid clothing," and (2) "[b]y doing so, [D]efendant intended to prevent the apprehension, prosecution, or conviction of [Defendant] for the crime or crimes of

aggravated burglary, criminal sexual penetration, criminal sexual contact, and/or aggravated battery." *See* UJI 14-2241 NMRA.

**{17}** "When there is no other evidence of the specific intent . . . to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515. But where there is no direct evidence of an intent to undermine law enforcement activities, and no overt act permitting an inference of such intent, "the evidence cannot support a tampering conviction." *State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192, *holding modified by State v. Guerra*, 2012-NMSC-027, ¶¶ 14-15, 284 P.3d 1076.

**{18}** In a tampering case where evidence was never recovered, evidence showing that a defendant had evidence and used that evidence to commit a crime combined with a showing that the evidence was then removed from the scene and never recovered is insufficient to show that the defendant had the intent required by the tampering with evidence statute. *See State v. Carrillo*, 2017-NMSC-023, ¶ 47, 399 P.3d 367; *Silva*, 2008-NMSC-051, ¶¶ 17-19. In *Arrendondo*, our Supreme Court concluded that evidence was insufficient to support a tampering conviction where "the [s]tate provided evidence that [the defendant] took the [evidence] when he left the crime scene, but it offered no evidence that [the defendant] actively hid or disposed of it." 2012-NMSC-013, ¶ 33, 278 P.3d 517.

**{19}** By contrast, we have held that evidence was sufficient to support a tampering conviction for a knife that was never recovered where the defendant described having thrown the knife from his vehicle as he departed the scene of the stabbing. *See State v. Sanchez*, 2015-NMCA-077, ¶¶ 2, 19, 355 P.3d 51. Similarly, in *State v. Torrez*, our Supreme Court concluded the defendant's testimony that "immediately after the shooting, he took most of the guns and put them behind his refrigerator," supported the conclusion that tampering with evidence was proven beyond a reasonable doubt. 2013-NMSC-034, ¶ 44, 305 P.3d 944.

**{20}** Here, the State has provided nothing more than evidence showing that Defendant was wearing a black and white shirt when he committed his crimes, combined with evidence that the black and white shirt was never found. More specifically, the State's evidence—testimony that the Deputy asked Defendant to retrieve the shirt he was wearing earlier that day and that Defendant did not provide it to him—failed to establish that Defendant actively hid or destroyed the black and white shirt.

**{21}** The State contends this case is like *Carrillo*, because there was evidence that Defendant had been observed with the missing evidence—the black and white shirt in this case and a gun in *Carrillo*—at or soon after the time of the commission of the crime, and Defendant was located soon thereafter without the shirt. *See* 2017-NMSC-023, ¶ 46. Thus, the jury could reasonably conclude that Defendant lied to prevent the missing shirt from being located, and could conclude Defendant tampered with evidence. *See id.* We disagree. In *Carrillo*, evidence was presented that the defendant was seen with a

gun shortly after the shooting deaths occurred, was seen using a gun to break a car window, was found without a gun shortly thereafter, and lied about using his hand rather than a gun to break the car window. *Id.* ¶¶ 6-7. Lying about breaking the window with his hand was an overt act from which the jury could infer the requisite specific intent to tamper. *Id.* ¶ 47; *see State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 ("A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." (alterations, internal quotation marks, and citation omitted)). In contrast here, the State argues the jury could infer Defendant was lying simply because Defendant was seen wearing the shirt and then did not provide it to law enforcement a few hours later, which would then provide the "overt act" necessary for the jury to infer the necessary specific intent for the tampering conviction. However, the State presented no evidence that Defendant lied, instead only provided evidence that he did not produce his shirt to law enforcement after looking for it. Thus, no evidence of an overt act was presented to support Defendant's tampering with evidence conviction.

**{22}** Accordingly, we determine the State's evidence falls short of "evidence of an overt act from which the jury may infer . . . intent [to tamper]," *Silva*, 2008-NMSC-051, ¶ 18, and therefore, conclude that the evidence was insufficient to support Defendant's conviction for tampering with evidence.

### III. The District Court Did Not Abuse Its Discretion by Denying Defendant's Motion for Mistrial

**{23}** Defendant's final argument is that the district court erred in denying its motion for mistrial based on juror misconduct. "A denial of a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lymon*, 2021-NMSC-021, ¶ 12, 488 P.3d 610 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**{24}** Defendant argues that evidence demonstrated that a juror determined Defendant's guilt before the close of evidence and shared his opinions with other jurors, which required the district court to declare a mistrial or excuse the juror. However, the juror was identified and questioned by the district court. He denied saying that Defendant was guilty and stated he did not hear anyone else saying that and there was no reason he could not be a fair and impartial juror. Based on the statements of the juror, we cannot say that the district court's decision was "clearly against the logic and effect of the facts and circumstances," *State v. Maples*, 2013-NMCA-052, ¶ 13, 300 P.3d 749 (internal quotation marks and citation omitted), and conclude that it was not an abuse of discretion to deny Defendant's motion for mistrial.

**CONCLUSION**

**{25}** For the foregoing reasons, we vacate Defendant's convictions for aggravated battery and tampering with evidence, and otherwise affirm.

**{26}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**GERALD E. BACA, Judge**